UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JULIE KONDZIELA,

              Plaintiff,

    v.

COUNTY OF ERIE,
ERIE COUNTY SHERIFF, TIMOTHY B.
HOWARD,
DEPUTY DARYL DEMARI, *individually and as*
*Erie County Sheriff's Deputy*,
DEPUTIES JOHN DOE AND JANE DOE,
*individually and as Erie County Sheriff's Deputies*,

              Defendants.

**DECISION AND ORDER**
09-CV-601S

## I. INTRODUCTION

In this action, Plaintiff asserts claims under the Fourth and Fourteenth Amendments

of the United States Constitution pursuant to 42 U.S.C. § 1983, as well as claims under

Article I, § 12 of the New York State Constitution, pursuant to 29 U.S.C. § 1367(a).

Plaintiff's claims arise from her arrest by Erie County Sheriff's deputies in Grand Island,

New York on April 1, 2008.  Plaintiff seeks money damages in the amount of $27,000,000

for Defendants' violations.  Presently before this Court is Defendants' motion to dismiss

Plaintiff's complaint in its entirety.  For the reasons discussed below, Defendants' motion

to dismiss is granted.[1]

---

[1]In support of their Motion to Dismiss, Defendants filed a Memorandum of Law, the Declaration of James W. Carey, Esq., and a Reply Declaration.  (Docket Nos. 2, 3, 11.)
    In opposition to Defendants' Motion to Dismiss, Plaintiff filed a Response Memorandum and the Affidavit of David C. Crowther, Esq.  (Docket Nos. 6, 7.)

## II. BACKGROUND

**A.    Facts**

In adjudicating Defendant's motion to dismiss, this Court assumes the truth of the following factual allegations contained in the complaint.  See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 1850, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff is a resident of Grand Island, Erie County, in the State of New York. (Complaint ("Comp."), ¶ 3.)  Defendant, the County of Erie, is a municipal corporation duly organized under the laws of the State of New York. (Id. at ¶ 4.)  Defendant Sheriff Timothy Howard is an elected official and employee of the County of Erie.  (Id.)  The remaining defendants are all police officers also employed by the County of Erie.  (Id. at ¶¶ 6-7.)

On April 1, 2008, at approximately 5:00 P.M., Plaintiff was pulled over by Deputies Daryl Demari and John Doe while driving in the town of Grand Island, Erie County.  (Id. at ¶ 12.)  The stop was prompted by an electronic scan, which revealed that the vehicle's registration was suspended.  (Id. at ¶ 13.)  Further investigation revealed that Plaintiff's driver's license had also been suspended.  (Declaration of James W. Carey, ("Carey Decl."), Docket No. 2, Ex. C)  Plaintiff was handcuffed and placed under arrest. (Comp. ¶ 14.)  Although Plaintiff states that she was not provided with an explanation for her arrest, (id. ¶ 16), she was given the opportunity to make a phone call to her girlfriend.  (Carey Decl., Ex. B, 20:8-20:22.)  During that conversation, Plaintiff told her girlfriend that the police had said that her license was bad and that she was being arrested.  (Id.)

During her arrest, Plaintiff informed the officers that she suffered from multiple sclerosis.  (Comp. ¶ 19.)  She further told them that she required her auto-injector in order

2

to self-administer her daily medication.  (Id.)  On Plaintiff's directions, the officers searched, but could not locate, the auto-injector in Plaintiff's vehicle and did not permit Plaintiff to look for it herself.  (Carey Decl., Ex. B, 21:9-22:1.)

After failing to find the auto-injector, Deputies Demari and John Doe took Plaintiff to the Erie County Holding Center.  (Id. at ¶ 21.)  There, Plaintiff was searched both over and under her clothing by Defendant Officer Jane Doe, in the presence of Deputy Demari. (Id. at ¶ 22.)  In addition, Plaintiff was instructed to take off her shoes, which were specially crafted to help Plaintiff with her multiple sclerosis.  (Id. at ¶¶ 24-25.)  Plaintiff was at the holding center for approximately two hours before being released.  (Id. at ¶ 26.)

Plaintiff now seeks to recover damages for violations of her right to be free from unreasonable search and seizures under the Fourth Amendment of the United States Constitution and Article I, § 12, of the New York State Constitution, inadequate medical care under the Fourteenth Amendment of the United States Constitution, and conspiracy to commit the same.[2]

## B.    Procedural History

Plaintiff commenced this action on June 29, 2009, by filing a complaint in the United States District Court for the Western District of New York.  Defendant filed the instant motion to dismiss Plaintiff's complaint in its entirety on July 21, 2009.

---

[2]Plaintiff originally brought nine causes of action.  Plaintiff now concedes that there was probable cause to arrest and withdraws her claim to the contrary.  (Affidavit of David C. Crowther ("Crowther Aff."), Docket No. 7, ¶ 8.)  Plaintiff also concedes that she was not held at the holding center for an unreasonable amount of time, and withdraws that claim as well.  (Id.)  Similarly, Plaintiff does not contest Defendants' immunity on various other of Plaintiff's claims, leaving the aforementioned causes of action. (Plaintiff's Memorandum of Law, Docket No. 6, 5-6.)

## III. DISCUSSION

**A.    Legal Standard**

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of the claim.  Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)  ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1945 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility is present when the factual content of the complaint allows for a reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949.  The plausibility standard is not, however, a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief.  Id. at 1950; Fed. R. Civ. P. 8(a)(2).

4

A two-pronged approach is thus used to examine the sufficiency of a complaint. First, statements that are not entitled to the assumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away. See Iqbal, 129 S.Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."[3] Id.

**B.     Plaintiff's Fourth Amendment Claim**

Defendant moves to dismiss Plaintiff's unlawful search claim on the ground that no facts are alleged to support finding the search unreasonable.  Plaintiff states that she was touched "underneath her shirt . . .underneath [her] breasts . . . down through the front of [her] underwear" and that the officer's hand went "through the middle of the buttock." (Carey Decl., Ex. B, 41:9-42:19.)  Based on this description, this Court finds that Plaintiff has asserted no facts rising to the level of a violation of the Fourth Amendment of the United States Constitution or Article I, § 12 of the New York State Constitution.[4]

It is well settled in the Second Circuit that the Fourth Amendment precludes prison

---

[3]Although seemingly inconsistent with the command to treat well-pleaded factual allegations as true, this plausibility inquiry appears to include consideration of whether more likely or alternative explanations for the complained-of conduct exist.  See, e.g., Iqbal, 129 S.Ct. at 1951-52 ("But given more likely explanations, [the allegations] do not plausibly establish this purpose."); Twombly, 550 U.S. at 567-68 (finding that plaintiff's allegations were not suggestive of antitrust conspiracy in the face of an "obvious alternative explanation" for the allegations in the complaint).

[4]The right to be free from unreasonable search and seizures under the Fourth Amendment and Article I, § 12 of the New York State Constitution are largely coextensive.  Febres v. City of New York, 238 F.R.D. 377, 392 (S.D.N.Y. 2006).  "This court has repeatedly stated that the proscription against unlawful searches and seizures contained in N.Y. Constitution, article I, § 12 conforms with that found in the 4[th] Amendment, and that this identity of language supports a policy of uniformity between State and Federal courts."  People v. Johnson, 488 N.E.2d 439, 445 (N.Y. 1985).  Consequently, if this Court finds that Plaintiff's Fourth Amendment rights have not been violated it will also conclude that Plaintiff's parallel rights under the New York State Constitution have not been violated.  See Febres, 238 F.R.D. at 392.

officials from performing strip searches and body cavity searches of arrestees charged with misdemeanors unless they have reasonable suspicion that the arrestee is concealing contraband or a weapon. Marriot v. County of Montgomery, 426 F. Supp. 2d 1, 7 (N.D.N.Y. 2006). In Vassallo v. Lando the plaintiff was searched and told to roll up his pant legs and lift the bottom of his t-shirt to expose his waistband. 591 F. Supp. 2d 172, 197-98. The court concluded that this did not constitute a strip search, distinguishing it from cases like Phaneuf v. Fraikin, where plaintiff removed her skirt completely and pulled her undergarments away from her body. See 448 F.3d 591, 598 (2d Cir. 2006). Similarly here, Plaintiff has only stated that her pants were brought down a little below her hip bone. (Carey Decl., Ex. B, 41:13-42:12.) This does not rise to the level of a strip search. Having concluded that the present case did not entail a strip search, this Court concludes that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Bell v. Wolfish, 441 U.S. 520, 546, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). Plaintiff has not presented this Court with any case law challenging as reasonable a holding center's power to search, but not strip search, an arrestee. Id. at 540-41. Consequently, Defendants' motion to dismiss Plaintiff's unlawful search claim will be granted.

**C.    Plaintiff's Inadequate Medical Care Claim**

Defendant also moves to dismiss Plaintiff's claim that she was denied medication. Plaintiff alleges that she was denied two medical necessities related to her Multiple Sclerosis. First, an auto injector that provides a medicinal shot and must be used on a daily basis. Second, her prescription shoe lifts, which help maintain her balance. Pre-trial

detainees suffering from inadequate medical care by the state may bring claims under the Due Process Clause of the Fourteenth Amendment. Thomas v. Nassau County Corr. Ctr., 288 F. Supp. 2d 333, 337 (E.D.N.Y. 2003). The standard for proving a constitutional claim for inadequate medical care is "deliberate indifference to a prisoner's serious medical needs." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 105, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). The first part of this standard requires that the deprivation of care be objectively serious. Id. at 338. Sufficiently serious deprivations have been found where "officials deliberately delayed care as a form of punishment, ignored life threatening and fast-degenerating conditions for three days, or delayed major surgery for over two years." Id. at 339. Here, Plaintiff was in custody for approximately two hours. She gave herself the necessary medicinal shot that evening, after being released. She was without her shoes only for the duration of her detention. At no point did Plaintiff fall. In fact, at no point did Plaintiff suffer any injury as a result of being deprived of either of her medical necessities.

Plaintiff's descriptions, in general, describe only what amounts to an unpleasant pair of hours spent in a holding facility. While this Court does not doubt that the experience proved emotionally shocking for the Plaintiff, such circumstances do not rise to the level of seriousness constituting a violation of Plaintiff's due process rights under the Fourteenth Amendment. See id. at 338-39 (even if treatment delayed, Plaintiff must show worsening or deterioration as result of delay).

Consequently, Defendants' motion to dismiss Plaintiff's denial of medication claim will be granted.

**D.      Plaintiff's Unlawful Arrest Claim**

Lastly, Defendant moves to dismiss Plaintiff's claim that she was denied the reasons

7

for her arrest.  Plaintiff asserts that Defendants' failure to inform her why she was being arrested constitute a violation of her constitutional rights.

At the outset, this Court notes that a police officer's failure to inform an arrestee of the grounds for which he is being arrested does not constitute a constitutional violation. Murphy v. Sr. Investigator Neuberger, No. 94 Civ. 7421, 1996 WL 442797, at *8, n.5 (S.D.N.Y. Aug. 6, 1996); People v. Hampton, 844 N.Y.S.2d 399, 400 (N.Y. App. Div. 2007). However, New York law requires that a police officer making a warrantless arrest must inform the suspect of his authority and the purpose and reason for such an arrest. N.Y.C.P.L. Art. 140.15(2).  An arrest made without explaining the basis for detention is unlawful under New York law.  People v. Henry, 579 N.Y.S.2d 565, 571 (N.Y. Sup. Ct. 1991).

Here, Plaintiff made a phone call following her arrest during which she stated that she was being arrested and that the police had told her there was a problem with her driver's license.  (Carey Decl., Ex. B, 20:20, 33:16-34:2; 71:16-71:20.)  Additionally, her complaint states that she was stopped because an electronic scan of her license plate indicated that the vehicle's registration was suspended.  (Complaint ¶ 13.)  However, other parts of her testimony highlight Plaintiff's belief that she had not been given the reason for her arrest, including that she was apparently told that there was a warrant out for her arrest.  (See Carey Decl., Ex. B, 24:21-25:11; 44:18-44:22; but see 30:16 - 31:1; 32:5 - 33:6.)

On a motion to dismiss, this Court must presume as true all Plaintiff's non-conclusory factual allegations.  Iqbal, 129 S. Ct. at 1950.  These must nudge the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.  Plaintiff's

8

testimony reveals that the officers did provide Plaintiff with some information, although Plaintiff did not believe this explained the cause of her arrest.  Although there appears to be some doubt whether, under New York law, sufficiency of warning can be inferred from circumstance, see Henry, 579 N.Y.S.2d at 571, here it was not the fact that Plaintiff was actually driving with a suspended license and registration that gave her notice of why she was being arrested, but Plaintiff's own testimony demonstrating her awareness of the grounds for the arrest.  Cf. People v. Marsh, 228 N.E.2d 783, 785-86 (N.Y. 1967) (arrest for traffic infraction permissible).  This is corroborated by the fact that she was able to make a phone call describing the problem and what was happening as a result.  On this basis, this Court will therefore grant Defendants' motion to dismiss Plaintiff's remaining claim.

### E.   Defendants' Remaining Arguments

Defendants also argue that neither the County nor Defendant Howard can be held liable for the actions of the deputy officers because the county has not assumed liability, Defendant Howard specifically is not liable for his deputies while they engage in criminal justice functions, and the deputies are not liable because they are entitled to qualified immunity.  Because this Court grants Defendants' motion to dismiss on the merits, it need not consider these further arguments.

### IV. CONCLUSION

Plaintiff has conceded various of Defendants' arguments and withdrawn claims accordingly.  Defendants' Motion to Dismiss as to these claims is granted.  On those claims that remain, for the reasons discussed above, Defendants' Motion to Dismiss is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 2) is

GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:        September 10, 2011
              Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court
